THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

R&J TECHNICAL SERVICES, INC.,   )   Case No. 1:10CV00040 DS

        Plaintiff,   )

   vs.   )   MEMORANDUM OPINION
                                    AND ORDER
CHRIS KAMPH, ET AL.,
                             )

        Defendants.   )

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## **I. INTRODUCTION**

Defendant Drilling Services International, Inc., aka DSI, and Russ Gibson[1] move the court to dismiss this action for lack of personal jurisdiction over them.

It is alleged in this case that Plaintiff is a Utah corporation with its primary place of business in Layton, Utah, and tht DSI is a resident of Idaho. Plaintiff seeks damages for tortuous interference in a contractual relationship, fraud and multiple other claims relating to disclosure of confidential information. DSI is alleged to have recruited an employee of Plaintiff R&J Technical Services, Inc. ("R&J") in North Dakota, who allegedly imparted proprietary information to DSI.

---

[1] As far as the Court can determine from the record before it, Russ Gibson is not a named defendant. Therefore, the pleadings submitted on behalf of Mr. Gibson, to the extent relevant, will be construed as relating to Defendant DSI.

## II. STANDARD

In deciding a motion to dismiss for lack of jurisdiction the court is guided by the following general principles.

> Where ... there has been no evidentiary hearing, as in this case, and the motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists. ... All facutal disputes are resolved in favor of the plaintiffs when determining the sufficiency of this showing.

*Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009)(quotation marks and citations omitted)

## III. DISCUSSION

**A. Jurisdiction**

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). In Utah, jurisdiction over nonresident defendants can be either general (doing business concept) or specific (arising out of or related to enumerated activities). *STV Int'l Mktg v. Cannondale Corp.*, 750 F. Supp. 1070, 1073 (D. Utah 1990); *Abbott G.M. Diesel, Inc. v. Piper Aircraft Corp.*, 578 P.2d 850, 853 n.6 (Utah 1978).

Here, R&J asserts that "DSI is subject to specific personal jurisdiction because DSI purposefully directed its activities at a resident of Utah, and the litigation results from alleged injuries that arise out of or are related to those activities." Mem. Opp'n at 9.

### 1. **Specific Jurisdiction**

In cases asserting specific jurisdiction, Utah employs a three step inquiry.[2] However, because the Utah Supreme Court has explicitly said that "any set of circumstances that satisfies due process will also satisfy the long-arm statute", *SII MegaDiamond, Inc. v. Am. Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998), the Utah standard is collapsed into the more general due process standard. *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir.

---

[2] "[T]he evaluation of specific jurisdiction in Utah mandates a three-part inquiry: '(1) the defendant's acts or contacts must implicate Utah under the Utah long-arm statute; (2) a 'nexus' must exist between the plaintiff's claims and the defendant's acts or contacts; and (3) application of the Utah long-arm statute must satisfy the requirements of federal due process.'" *National Petroleum Mkt'g, Inc. v. Phoenix Fuel Co.*, 902 F. Supp. 1459, 1465 (D. Utah 1995)(quoting *Harnischfeger Eng'rs, Inc.*, 883 F. Supp. at 612-13); *see also Far West Capital, Inc.*, 46 F.3d at 1074.

*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999).

2009). The focus, therefore, is whether subjecting Defendant DSI to suit in Utah comports with due process.

> A two-part test exists to guide the court in this determination. First, the court must find that certain "'minimum contacts'" exist between the State of Utah and [defendant] . . . . Second, if the court finds that minimum contacts exist, exercising jurisdiction over [defendant] must "not offend 'traditional notions of fair play and substantial justice.'"

*Harnischfeger Eng'rs, Inc. v. Uniflo Conveyor, Inc.*, 883 F. Supp. 608, 614 (D. Utah 1995)(citations omitted).

### 1. **Minimum Contacts**

A federal court sitting in diversity 'may exercise personal jurisdiction over a nonresident defendant only so long as there exists "minimum contacts" between the defendant and the forum State.'" *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).

"The minimum contacts necessary for specific personal jurisdiction may be established where the defendant has purposefully directed its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Trujillo v. Williams*, 465 F.3d 1210, 1218 (10th Cir. 2006)(internal quotations and citations omitted); *Calder V. Jones*, 465 U.S. 783 (1984). Plaintiff asserts that "DSI is subject to specific personal jurisdiction because DSI purposefully directed its

4

activities at a resident of Utah, and the litigation results from alleged injuries that arise out of or are related to those activities." Mem. Opp'n at 9.

Purposeful direction can be found from the presence of "(a) an intentional action ... that was (b) expressly aimed at the forum state ... with (c) knowledge that the brunt of the injury would be felt in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*. 514 F.3d 1063, 1072 (10th Cir. 2008)(citing *Calder v. Jones*, 465 U.S. 783 (1984).

Plaintiff, however, has failed to allege that DSI purposefully directed its alleged activities towards Utah with the knowledge that the brunt of the injury will be felt in Utah. The relevant allegations against DSI, distilled to their essence, are as follows:

- Defendant Kamph was hired by R&J in July 2008 to work as an oil rig technician in Wyoming.

- In November 2008, R&J expanded its operations into North Dakota, where Kamph was promoted and gained proprietary information about R&J's business activities in North Dakota.

_ Kamph entered into a Non-Compete and Confidentiality Agreement with R&J in February 2009.

- Defendants Stucker and Haymond after working several months for R&J in Alaska, terminated their employment and later helped spearhead the formation of Defendant DSI.

5

- In May 2009, representatives of DSI met with Kamph in North Dakota, while he was employed with R&J, to recruit him as an employee to work for DSI in North Dakota.

- Kamph informed DSI representatives that he had signed a Non-compete and Confidentiality Agreement with R&J.

- When asked by DSI representatives if he could supply them with confidential information belonging to R&J, Kamph stated that he could supply that information.

- While Kamph was still employed with R&J, representatives of DSI provided Kamph with a "Statement of Interest" to take to R&J's customers in North Dakota as a means of determining which customers would be interested in doing business with DSI.

- Kamph eventually left R&J to work for DSI in North Dakota.

- Representatives of DSI misrepresented to R&J customers in North Dakota that there was a relationship between DSI and R&J. *See* Compl. at ¶¶ 11,13,14,21,45,47,50,51,55,57,58,59,& 100.

While Plaintiff alleges that there were intentional acts, the Court finds no allegations that DSI expressly targeted R&J in Utah as part of the alleged misconduct. *See Dudnikov*, 514 F.3d at 1075 n.9 ("[s]ome courts have held that the 'expressly aimed' portion of [the purposeful direction test] is satisfied when the defendant 'individually target[s] a known forum resident.' ... We have taken a somewhat more restrictive approach, holding that the forum state itself must be the 'focal point of the tort.'"). As DSI notes,

nothing alleged suggests that DSI even knew that R&J is a Utah Corporation with its principal place of business in Utah. R&J by its own allegation does business "throughout the United States, including but not limited to, oil rigs located in Wyoming and North Dakota". Compl. ¶10. Moreover, the allegations suggest that DSI's intentions and conduct were concerned with beginning or improving its business activities in North Dakota. On their face those allegations are unrelated to Utah. "The 'express aiming' test focuses more on a defendant's intentions - where was the 'focal point' of its purposive efforts". Dudnikov, 514 F.3d at 1075. The focal point of DSI's conduct clearly was North Dakota. The allegations do not suggest, as asserted by Plaintiff that the focal point of DSI's efforts was to reach into Utah to terminate and breach the Utah Confidentiality Agreement between R&J and

Kamph.[3]

Similarly, there are no allegations that DSI knew that the brunt of any injuries to R&J would be felt in Utah. Without an allegation that DSI knew that Plaintiff had its principal place of business in Utah, it does not follow that DSI knew that the effects of its alleged conduct would be felt in Utah. In any event, the "mere foreseeability of causing injury in another state 'is not a sufficient benchmark' for exercising personal

---

[3] In contrast, in *Gage, Inc. v. BioConversion Tech. LLC*, et al., (2009 WL 3181940 * 8 (D. Utah Sept. 30, 2009)(No. 2:08CV57 DB), upon which Plaintiff relies, the court specifically found that defendants were endeavoring to terminate a Utah contract.

> In this case, the focal point of the Khosla defendants' efforts was the termination of a Utah contract - GAGE's License Agreement. Having requested and received a copy of the License Agreement, the Khosla defendants knew that GAGE, a Utah corporation with its principal place of business in Utah, was the holder of certain property rights sought after by the Khosla defendants. Additionally, the Khosla defendants knew that the License Agreement was made in the state of Utah, that it contained a forum selection clause for Utah, and that it contained a Utah choice-of-law provision. With this knowledge, the Khosla defendants thereafter directed BCT to "clean up" its licensee agreements and then provided legal counsel and specific instruction concerning the termination of GAGE's License Agreement in particular. Given these facts, plaintiff has shown that the intended effect of the defendants' conduct was the termination of GAGE's License Agreement. Stated another way, as the court did in *Dudnikov*, the "express aim" of the Khosla defendants' conduct was to effectively reach into Utah and terminate GAGE's License Agreement.

8

jurisdiction". *Trierweiller v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1534 (10th Cir. 1996)(citation omitted).

In sum, the allegations do not support a conclusion that the alleged wrongful conduct was expressly aimed at Utah, or that DSI knew that the brunt of its alleged wrongful conduct would be felt in Utah. The Court, therefore, concludes that Plaintiff has failed to demonstrate that this Court has personal jurisdiction over DSI.

## IV. CONCLUSION

For the foregoing reasons, Defendant DSI's Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (Doc. #4 & #10) is granted.

IT IS SO ORDERED.

DATED this 9th day of November, 2010.

BY THE COURT:

_David Sam_
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT